### GARVAN v. $20,000 BONDS and three other cases.

(Circuit Court of Appeals, Second Circuit. March 3, 1920.)

Nos. 157, 158, 169, and 170.

1. War ⊙=12—Alien Property Custodian may apply to court for aid in obtaining possession of property.

The Alien Property Custodian, appointed under Trading with the Enemy Act Oct. 6, 1917, § 6 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½cc), may properly, under section 17 (section 3115½i), apply to a District Court for aid in obtaining possession of property to which he is entitled.

2. War ⊙=12—Alien Property Custodian entitled to possession of securities deposited by German insurance companies; "lienholders."

Trustees, with whom German insurance companies, doing business in this country before the war, deposited securities as required by state laws for the protection of American policy holders and creditors, are not mere "lienholders," within the meaning of Trading with the Enemy Act Oct. 6, 1917. § 8 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½dd), but trustees of an active trust, and under § 7(c), as amended by Act Nov. 4, 1918, § 1 (Comp. St. Ann. Supp. 1919, § 3115½d), the Alien Property Custodian is entitled to possession of such securities; the rights of policy holders and creditors being fully protected by the act.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Lienholder.]

Appeals from the District Court of the United States for the Southern District of New York.

Libels by Francis P. Garvan, Alien Property Custodian against $20,000, par value, bonds, Central Union Trust Company of New York, Trustee, claimant, against $100,000 bonds, Edwin G. Menil and others, claimants, against $50,000 bonds, J. Markham Marshall, and others, claimants, and against $25,000 bonds, J. Markham Marshall and others, claimants. Decrees for libelant, and claimants appeal. Affirmed.

Francis G. Caffey, U. S. Atty., of New York City (Spier Whitaker, Sp. Asst. Atty. Gen., and Earl B. Barnes, Asst. U. S. Atty., of New York City, of counsel), for libelant.

Miller, King, Lane & Trafford, of New York City (Perry D. Trafford, of New York City, of counsel), for appellants Central Union Trust Co. and Merrill and others.

Root, Clark, Buckner & Howland, of New York City (Emory R. Buckner and H. H. Nordlinger, both of New York City, of counsel), for appellants Marshall and others.

Before WARD, HOUGH, and MANTON, Circuit Judges.

⊙=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WARD, Circuit Judge. Connecticut and Massachusetts require, as do almost all the states, that insurance companies of foreign nations, before doing business in the state, shall deposit funds or securities for the protection of the company's policy holders and creditors in the United States. The exact terms of the statutes need not be stated. The Munich Reinsurance Company, a German corporation did deposit a quantity of securities with trustees in conformity with the law of the state of Connecticut. The Frankfort General Insurance Company and the Allianz Insurance Company, both German companies, deposited securities with trustees in conformity with the requirements of the law of Massachusetts.

It will not be necessary to set out the terms of the trusts at length; it is enough to say that, although the income of the securities is payable to the companies and they can withdraw them, or any of them, upon substituting others equally good, and can change the trustees, still the trustees hold the securities in trust to pay the claim of any policy holder or creditor admitted to be due by the company or established by the claimant in due course of law. It is apparent that the trustees hold primarily for the benefit of the policy holders and creditors, and secondarily for the benefit of the companies; but their duties are active, and they are not merely lienholders. The companies cannot take the securities out of their possession until the rights, absolute or contingent, of all policy holders and creditors in this country are secured, and in the meantime the trustees have the active duty of collecting and paying over the income, investing and reinvesting, and paying claims properly proved.

The President, through the Secretary of the Treasury, issued licenses to the companies in question, not to continue to do business in the United States, but for the purpose of being liquidated. In November, 1918, the Alien Property Custodian filed libels of information in the District Court of the United States for the Southern District of New York against the securities in question, alleging his demand for the same of the trustees and their refusal, and praying the court to order the United States marshal to seize the same and deliver them to him to be held and applied in accordance with law. The court made the decrees prayed for, and the securities have been seized by the marshal and delivered to the Alien Property Custodian; the trustees appeal.

[1] We have no doubt of the right of the Alien Property Custodian to apply to the court for aid; if he did not know where the securities were, he would evidently be entitled to the aid of the court to compel the trustees to discover and deliver them. In this case he did know where they were, but it was much more orderly and decent to obtain possession by the aid of the court than to seize them by violence and the strong hand. Section 17 of the Act of October 6, 1917 (40 Statutes at Large, 411 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½i]), known as the Trading with the Enemy Act, gives the court full power in the premises:

"That the District Courts of the United States are hereby given jurisdiction to make and enter all such rules as to notice and otherwise, and all such

orders and decrees, and to issue such process as may be necessary and proper in the premises to enforce the provisions of this act, with a right of appeal from the final order or decree of such court as provided in sections 128 and 238 of the act of March 3d, 1911, entitled 'An Act to codify, revise, and amend the laws relating to the judiciary.'"

The material parts of section 7 (c) of the act as amended November 4, 1918 (40 Statutes at Large, 1020 [Comp. St. Ann. Supp. 1919, § 3115½d]), read:

"(c) If the President shall so require any money or other property, including (but not thereby limiting the generality of the above) patents, copyrights, applications therefor, and rights to apply for the same, trade-marks, choses in action, the rights and claims of every character and description owing or belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy or ally of enemy not holding a license granted by the President hereunder, which the President after investigation shall determine is so owing or so belongs or is so held, shall be conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or the same may be seized by the Alien Property Custodian; and all property thus acquired shall be held, administered, and disposed of as elsewhere provided in this act. * * *

"The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or required so to be, or seized by him shall be that provided by the terms of this act, and in the event of sale or other disposition of such property by the Alien Property Custodian, shall be limited to and enforced against the net proceeds received therefrom and held by the Alien Property Custodian or by the treasurer of the United States. * * *"

The constitutionality of the act under the war powers of Congress is admitted; the dispute between the parties being as to the construction of it.

[2] The trustees claimants contend that the Alien Property Custodian can seize only property belonging wholly to alien enemies; that he stands in their shoes and can get no more than they could themselves. On the other hand, the Alien Property Custodian contends that, the President having delegated his authority to him under section 5 of the act, he can conclusively determine what property is liable to seizure as being that of an alien enemy.

We agree with the Alien Property Custodian, and cannot read the perfectly plain language of section 7 (c) in any other way. As all the facts were known and undisputed, they amounted to an investigation by the Alien Property Custodian. If persons not alien enemies, or allies of alien enemies, were given no means to protect their interests in such property the seizure would be unconstitutional as without due process of law; but they are given such remedies under section 9:

"That any person not an enemy, or ally of enemy, claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian hereunder, and held by him or by the treasurer of the United States, or to whom any debt may be owing from an enemy, or ally of enemy, whose property or any part thereof shall have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian hereunder, and held by him or by the treasurer of the United States, may file with the said custodian

a notice of his claim under oath and in such form and containing such particulars as the said custodian shall require; and the President if application is made therefor by the claimant, may \* \* \* order the payment, conveyance, transfer, assignment or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the treasurer of the United States or of the interest therein to which the President shall determine said claimant is entitled: Provided, that no such order by the President shall bar any person from the prosecution of any suit at law or in equity against the claimant to establish any right, title or interest which he may have in such money or other property. If the President shall not so order within sixty days after the filing of such application, or if the claimant shall have filed the notice as above required and shall have made no application to the President, said claimant may, at any tme before the expiration of six months after the end of the war, institute a suit in equity [in the Supreme Court of the District of Columbia or] in the District Court of the United States for the district in which such claimant resides, or, if a corporation, where it has its principal place of business (to which suit the Alien Property Custodian or the treasurer of the United States, as the case may be, shall be made a party defendant), to establish the interest, right, title, or debt so claimed, and if suit shall be so instituted then the money or other property of the enemy, or ally of enemy, against whom such interest, right, or title is asserted, or debt claimed, shall be retained in the custody of the Alien Property Custodian, or in the treasury of the United States, as provided in this act, and until any final judgment or decree which shall be entered in favor of the claimant shall be fully satisfied by payment or conveyance, transfer, assignment, or delivery by the defendant or by the Alien Property Custodian or treasurer of the United States on order of the court, or until final judgment or decree shall be entered against the claimant, or suit otherwise terminated. \* \* \*" Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e.

The Alien Property Custodian takes possession subject to the rights of innocent persons. Section 12, as amended March 28, 1918 (40 Statutes at Large, 460), provides:

"The Alien Property Custodian shall be vested with all of the powers of a common-law trustee in respect of all property, other than money, which has been or shall be, or which has been or shall be required to be, conveyed, transferred, assigned, delivered, or paid over to him in pursuance of the provisions of this act, and in addition thereto, acting under the supervision and direction of the President, and under such rules and regulations as the President shall prescribe; shall have power to manage such property and do any act or things in respect thereof, or make any disposition thereof, or of any part thereof, by sale or otherwise, and exercise any rights or powers which may be or become appurtenant thereto or to the ownership thereof in like manner as though he were the absolute owner thereof. \* \* \*" Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½ff.

It is obviously of the utmost importance that in time of war enemy property should be put into the possession of government; on the other hand, no great harm can come to the interests of innocent persons since the possession and management of the property by the Alien Property Custodian is under the control of the President by regulation and of the courts by decree. Policy holders or creditors may proceed to protect their rights under section 9, or the trustees may do so for them. We do not think that the trustees claimants are mere lienholders under section 8 of the act, and as such to be entitled to retain possession of the property in question; they are, as stated above, trustees with active duties, and not lienholders, within the meaning of

the section at all. It clearly protects the lienholders, and especially the vast amount of loans against collateral, any interference with which would cause great injury to banks, trust companies and stockbrokers, and produce disturbance of business generally.

The decrees are affirmed.

HOUGH, Circuit Judge, concurs in result.