**AMERICAN EXCH. NAT. BANK v. GARVAN, Alien Property Custodian, et al.**

(Circuit Court of Appeals, Second Circuit. April 6, 1921.)

No. 240.

1. **War ⬉12—Alien Property custodian can seize property, notwithstanding error in determining it was enemy owned.**

   Under Trading with the Enemy Act, § 7, as amended by Act Nov. 4, 1918, § 1 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d), requiring any property, including choses in action, which the President determines belongs or is owing to an enemy not holding a license, to be delivered to the Alien Property Custodian, and section 9 (section 3115½e), providing for claims to property so delivered to the Custodian, which was a war measure intended for an emergency, the Custodian is authorized to seize property which he determines is alien owned, though it may ultimately appear that in fact it belonged to a citizen.

2. **War ⬉12—Bank, paying deposit to Alien Property Custodian, is not liable to depositor.**

   A bank, which pays a deposit to the Alien Property Custodian on the latter's demand, is protected against liability to the depositor by Trading

with the Enemy Act, § 7(e), being Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d, providing against liability for anything done in pursuance of any order under the authority of the act, so that the bank is not entitled to maintain a bill to require the Alien Property Custodian and the depositor to interplead to determine the rights to the deposit.

3. War ⚖=12—**Alien Property Custodian can seize debts owing to enemy.**

Under Trading with the Enemy Act, § 7 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d), authorizing seizure of enemy property by the Alien Property Custodian, especially since its amendment on November 4, 1918, so as expressly to include choses in action, the Custodian has authority to seize a debt owing to an alien enemy not possessing a license from the President.

4. Courts ⚖=405(5)—**Appeal to Circuit Court of Appeals is proper, where District Court maintained jurisdiction.**

Where the District Court maintained its jurisdiction against attack, an appeal from a final decree for complainant to the Circuit Court of Appeals was proper.

Appeal from the District Court of the United States for the Southern District of New York.

Interpleader by the American Exchange National Bank against Francis P. Garvan as Alien Property Custodian and John Simon. From a decree directing the payment of the fund in controversy to defendant Simon, the Alien Property Custodian appeals. Reversed, with directions to dismiss the bill.

See, also, 256 Fed. 680.

Francis G. Caffey, U. S. Atty., of New York City (Earl B. Barnes, of New York City, of counsel), for appellant.

White & Case, of New York City, for appellee bank.

Henry A. Wise, Cola G. Parker, and Ernest A. Bigelow, all of New York City, for appellee Simon.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge. December 13, 1918, A. Mitchell Palmer, Alien Property Custodian, made demand upon the American Exchange National Bank to pay over to him a deposit in the name of Simon of some $360,000, on the ground that he had determined it to be owing and belonging to one Albert, an alien enemy not holding a license granted by the President. January 6, 1919, he served another demand, and March 31, 1919, his successor, Francis P. Garvan served still another, differing in no substantial way from the original. Whether described as cash, or as a special deposit, or an indebtedness, or as a chose in action, every one concerned knew exactly what the Alien Property Custodian was demanding possession of.

December 23, the Bank filed this bill, alleging that the Alien Property Custodian had made demand upon it to pay over the deposit to him; that Simon had threatened to hold it liable if it did so pay over the deposit; that it could not determine which owned it; and praying that the court should order the Alien Property Custodian and Simon to interplead and settle their rights to the deposit account, the amount of which it offered to pay into court. January 14, 1919, Simon filed an answer, admitting the allegations of the bill, and asserting his own

title. Subsequently the Alien Property Custodian moved to dismiss the bill for lack of jurisdiction in the court to entertain it.

April 8, the District Judge held that the Alien Property Custodian had no power to seize the bank account or indebtedness, because it was a chose in action, denied the motion to dismiss the bill, ordered the plaintiff to pay the amount of its indebtedness into court, and Simon and the Alien Property Custodian to interplead. May 12, 1919, Judge Augustus N. Hand entered an order substituting Francis P. Garvan as Alien Property Custodian in place of A. Mitchell Palmer, and giving Simon five days within which to amend his answer, so as to allege that the various demands of the Alien Property Custodian were supported by no evidence whatever; in default of such amendment the clerk of the court was directed to pay over to the Alien Property Custodian the sum deposited in court and giving the Alien Property Custodian 20 days from the date of filing the amended answer to plead or move in respect thereto.

May 15, Simon filed an amended answer. June 3, the Alien Property Custodian filed his answer, praying that the court order the clerk to pay over to him as Alien Property Custodian the moneys paid into court, and that Simon be required to assert any right, title, or interest in the same which he may have according to and in compliance with the provisions of section 9 of the Trading with the Enemy Act, and for general relief.

January 7, 1921, the District Judge entered a final decree adjudging that Simon was the owner of the moneys on deposit in court and directing the clerk to pay the same to him less any sum deductible by law. Section 7 of the Trading with the Enemy Act, as amended November 4, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d), provides:

"If the President shall so require any money or other property including (but not thereby limiting the generality of the above), patents, copyrights, applications therefor, and rights to apply for the same, trade-marks, choses in action, and rights and claims of every character and description owing or belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy or ally of enemy not holding a license granted by the President hereunder, which the President after investigation shall determine is so owing or so belongs or is so held, shall be conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or the same may be seized by the Alien Property Custodian; and all property thus acquired shall be held, administered and disposed of as elsewhere provided in this act. * * *"

October 12, 1917, the President by executive order vested the power of determining what property belonged to alien enemies in the Alien Property Custodian:

"Executive Order.

"October 12, 1917.

*    *    *    *    *    *    *    *    *    *

"Alien Property Custodian.

"XXIX. I hereby vest in an Alien Property Custodian to be hereafter appointed, the executive administration of all the provisions of section 7 (a), section 7 (c), and section 7 (d) of the Trading with the Enemy Act, including all power and authority to require lists and reports, and to extend the time for filing the same, conferred upon the President by the provisions of said

section 7 (a), and including the power and authority conferred upon the President by the provisions of said section 7 (c), to require the conveyance, transfer, assignment, delivery or payment to himself, at such time and in such manner as he shall prescribe, of any money or other properties owing to or belonging to or held for, by or on account of, or on behalf of, or for the benefit of any enemy or ally of an enemy, not holding a license granted under the provisions of the trading with the enemy act, which, after investigation, said Alien Property Custodian shall determine is so owing, or so belongs, or is so held."

Section 7 (c) also provides:

"The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or required so to be, or seized by him shall be that provided by the terms of this act, and in the event of sale or other disposition of such property by the Alien Property Custodian, shall be limited to and enforced against the net proceeds received therefrom and held by the Alien Property Custodian or by the Treasurer of the United States."

The relief referred to is that provided in section 9 (section 3115½e).

[1] The argument of counsel for Simon that the act gives no power to the Alien Property Custodian to seize property which may ultimately turn out to be property of a citizen of the United States and that it gives him no right to make determinations as to such property is wholly inconsistent with its language and its purpose. The act is a war measure, intended in emergency to give the Alien Property Custodian immediate possession of all property which he determines to be property of an alien enemy without license from the President.

In the case of Garvan v. $20,000 Bonds, 265 Fed. 477, we considered the authority of the Alien Property Custodian with respect to seizures of property determined by him to be the property of alien enemies without license from the President, holding that his determination was conclusive and that while he might seize the property determined by him to belong to such an alien enemy with the strong hand he might also apply to the court under section 17 of the act (section 3115½i) for an order compelling the delivery of such property to the marshal to be by the marshal delivered to him. Judge Learned Hand followed this opinion in Kahn v. Garvan (D. C.) 263 Fed. 909, holding that a bill of interpleader in such case could not be maintained, and the Supreme Court affirmed our opinion on January 24, 1921. 254 U. S. 554, 41 Sup. Ct. 214, 65 L. Ed. ——. Mr. Justice Holmes throughout this opinion recognized the right of the Alien Property Custodian to immediate possession of property which he has determined to belong to alien enemies having no license from the President, whether his determination be right or wrong:

"If we look no further than section 7 (c), it is plain that obedience to the statute requires an immediate transfer in any case within its terms without awaiting a resort to the courts. The occasion of the duty is a demand after a determination by the President and it is hard to give much meaning to the words 'which the President after investigation shall determine is so * * * held,' unless the determination and demand call the duty into being. The condition 'after investigation' additionally points to the intent to make his act decisive upon the point, as it is in other cases mentioned in section 7 (a). But it is said that the subject of the section is enemy property only, and therefore

that the determination cannot be final in its effect. Day v. Micou, 18 Wall. 156, 21 L. Ed. 860. And it is true that it is not final against the claimant's rights. Upon surrender the claimant may at once file a claim under section 9, if he satisfies the representative of the President, may obtain a return, and, if he does not obtain it in sixty days after filing the application, may bring a suit to establish his rights in the District Court, in which case the property is to be retained by the Custodian until final decree. These provisions explain the initial words of section 7 (c) as saving the ultimate rights of the claimant while the determination of the President still may be given effect to carry out immediate seizure for the security of the government until the final decision upon the right. The reservation implies that mistakes may be made and assumes that the transfer will take place whether right or wrong.

"The argument on the original words of the act in view of the manifest purpose, seems to us to be strong, but it appears to us to be much strengthened by the amendments of later date. By the act of November 4, 1918, c. 201, 40 Stat. 1020, section 7 (c) was amended among other things by adding after the requirements of transfer 'or the same may be seized by the Alien Property Custodian, and all property thus acquired shall be held, administered and disposed of as elsewhere provided in this act.' This shows clearly enough the peremptory character of this first step. It cannot be supposed that a resort to the courts is to be less immediately effective than a taking with the strong hand."

[2] The amount of the plaintiff's indebtedness was admitted and the plaintiff in complying with the demand of the Alien Property Custodian would be in no danger whatever because section 7 (e) provides:

"(e) No person shall be held liable in any court for or in respect to anything done or omitted in pursuance of any order, rule, or regulation made by the President under the authority of this act.

"Any payment, conveyance, transfer, assignment, or delivery of money or property made to the Alien Property Custodian hereunder shall be a full acquittance and discharge for all purposes of the obligation of the person making the same to the extent of same. * * *"

[3] But the District Judge thought that the power of the Alien Property Custodian did not extend to seizing choses in action such as debts. In our opinion debts owing to an enemy were covered by the words of section 7 (c) of the Act as originally passed, viz. "any money or other property * * * owing or belonging to * * * an enemy or ally of enemy not holding a license granted by the President hereunder, which the President after investigation shall determine is so owing or so belongs * * * shall be * * * paid over to the Alien Property Custodian," but all doubt is removed by the language of the section as amended November 4, 1918, supra, in force at the time the first demand was made by the Alien Property Custodian, which expressly covers choses in action.

[4] As the District Judge maintained the jurisdiction, the appeal to this court was proper, under United States v. Jahn, 155 U. S. 109, 15 Sup. Ct. 39, 39 L. Ed. 87.

We will not go into any inquiry as to whether Simon or the Alien Property Custodian is entitled to the indebtedness of the plaintiff. Simon's remedy would be upon payment of that indebtedness to the Alien Property Custodian, if it were not returned on notice and demand within 60 days, to bring a suit in equity against him under section 9 of the act, the moneys being held to await the result of suit.

As the plaintiff had no standing whatever to file a bill of inter-

pleader, and the District Court had no jurisdiction to entertain it, the decree is reversed, and the court below directed to enter a decree dismissing the bill.

HOUGH, Circuit Judge (concurring). In the result of the foregoing opinion I concur; that is, I agree that neither the lower court nor any other tribunal in or of the United States had jurisdiction to compel the Custodian to come into court and either litigate or forego his demand against the bank or Simon or both. Therefore the bill of interpleader should have been dismissed.

The statute creating the Custodian enables him to capture enemy property with a sergeant and file, or otherwise vi et armis. He may also file a libel of possession, or he may sue in other ways; but he cannot be sued except in respect of that which he has already obtained. He can use his own method of procedure; courts cannot coerce him in limine.

But with all expressions in the majority opinion, indicating or suggesting a belief that the Custodian should have prevailed, had he elected to sue in any form in any court administering justice under the forms of law, I disagree.