## CLARK v. E. J. LAVINO & CO.
### M–1192.

District Court, E. D. Pennsylvania.
June 30, 1947.

Gerald A. Gleeson, U. S. Atty., and J. P. McCormick, Asst. U. S. Atty., both of Philadelphia, Pa., and Wallace H. Walker, Sp. Asst. to the Atty. Gen., for Tom C. Clark, Atty. Gen.

Joseph W. Henderson, Thomas F. Mount and L. Stanley Mauger (of Rawle & Henderson), of Philadelphia, Pa., for E. J. Lavino & Co.

BARD, District Judge.

This case is before the Court on petitioner's motion to strike respondent's answer, and for an order directing respondent to deliver to petitioner forthwith the sum of $25,000 with interest thereon from September 5, 1942.

The present action was instituted under Section 17 of the Trading with the Enemy Act[1] by the Attorney General as successor to the Alien Property Custodian. The pertinent facts which gave rise to the action are as follows:

On July 30, 1942, the Alien Property Custodian issued Vesting Order No. 77, in which he vested "all property of any nature whatsoever owned or controlled by, payable or deliverable to, or held on behalf of or on account of or owed to, Kawasaki Kisen

---

[1] 40 Stat. 425, 50 U.S.C.A.Appendix, § 17.

Kaisha, Ltd., a Japanese corporation, Kobe, Japan, or any and all of its three American branches located at: 8-10 Bridge Street, New York, New York; 311 California Street, San Francisco, California, and 1225 Exchange Building, Seattle, Washington."

By Vesting Order No. 80, issued July 30, 1942, the Alien Property Custodian vested "all property of any nature whatsoever owned or controlled by, payable or deliverable to, or held on behalf of or on account of or owed to Kawasaki Kisen Kabushiki Kaisha, a Japanese corporation, Kobe, Japan, or its American branch located at San Francisco, California."

A copy of each Vesting Order was served on respondent on August 7, 1946, and written acknowledgement of the receipt of each was signed by respondent's treasurer.

On September 12, 1946 the Alien Property Custodian issued a Turn-Over Directive to respondent, referencing Vesting Orders Nos. 77 and 80. The Turn-Over Directive stated that "the undersigned does hereby find and determine that the following described property, * * * $25,000, being the balance due by E. J. Lavino & Co. of 1528 Walnut Street, Philadelphia, Pennsylvania, on account of transportation of freight aboard the SS 'Norfolk Maru' furnished by the aforesaid nationals of a designated enemy country (Japan) now in your possession or under your control is property that was vested in the undersigned by the said Vesting Orders * * * The undersigned does hereby require that the said property, together with all dividends, accumulations and increment thereon, shall forthwith be by you turned over to the undersigned to be held, administered and accounted for as provided for by law." This Turn-Over Directive was signed by the Alien Property Custodian, and was served on respondent on October 15, 1946.

Respondent failed to turn over the sum of $25,000 to the Alien Property Custodian, whereupon the latter filed a petition in this Court, seeking an order requiring respondent to deliver to him forthwith the sum of $25,000, with interest from September 5, 1942. Respondent in its answer to the petition denies that the sum of $25,000 is due on account of transportation of freight

aboard the SS "Norfolk Maru" furnished by the Japanese shipping company. Respondent alleges that in July, 1941 it received a shipment of ore transported aboard the SS "Norfolk Maru", for which the freight charges were $72,753.27. Respondent further alleges that on or about July 1, 1941, it was advised by its agent in the Philippine Islands that the SS "Bordeaux Maru", another vessel owned by the Japanese shipping company, had been requisitioned by the Japanese Government, and that approximately 3,600 tons of chrome ore which were aboard that vessel and consigned for respondent's account had been discharged in Japan; as a result of the shipping company's failure to fulfil the terms of its promise to deliver the chrome ore in the United States, the respondent alleges that it sustained damages in the amount of $24,759.

Respondent avers that instead of paying the Japanese shipping company the sum of $72,753.27, which represented the freight charges for the cargo received from the SS "Norfolk Maru", it actually paid the Japanese shipping company the sum of $47,753.27, retaining $25,000 as a set-off against the $24,759 loss sustained by respondent in connection with the discharge of respondent's chrome ore from the SS "Bordeaux Maru" in Japan. Respondent admits that it owes the Japanese shipping company the sum of $241, and says that it is ready and willing to turn over that sum to the Alien Property Custodian.

Petitioner then filed the motion now under consideration, to strike respondent's answer upon the ground that the allegations of the answer which I have outlined above, are immaterial, insufficient in law, and fail to state a defense to petitioner's cause of action.

The property which is the subject matter of the present action is the $25,000, which sum respondent alleges was set-off against the account of the Japanese shipping company by reason of the financial damage which respondent sustained in connection with the contemporaneous transaction with that same company. Respondent takes the position that since this set-off was reflected on its books before Vesting Orders Nos.

77 and 80 were issued, and indeed before the war with Japan commenced, there was no sum of $25,000 due and owing to the Japanese shipping company and that therefore no property ever vested in the Alien Property Custodian.

I think that respondent's position indicates a misapprehension of the nature of the present proceeding. This is a summary proceeding, ancillary to the capture of enemy property by the United States in time of war, to obtain possession of property which the Alien Property Custodian has determined to be enemy property. The proceeding is purely possessory. It involves no adjudication of title to the property. Central Union Trust Co. of New York v. Garvan, 254 U.S. 554, 41 S.Ct. 214, 65 L.Ed. 403; Stoehr v. Wallace, 255 U.S. 239, 41 S.Ct. 293, 65 L.Ed. 604; Commercial Trust Co. of New Jersey v. Miller, 262 U.S. 51, 43 S.Ct. 486, 67 L.Ed. 858.

Respondent does not deny that it possessed the sum of $25,000. What it does deny is that that sum is held on behalf of, or on account of, or owing to the Japanese shipping company. However, it is well settled that in a proceeding under Section 17 of the Trading with the Enemy Act the Alien Property Custodian's determination that the property demanded is enemy property is conclusive, whether right or wrong. Central Union Trust Co. of New York v. Garvan, supra; Commercial Trust Co. of New Jersey v. Miller, supra.

It has also been held that a debt due an enemy is property which may be seized by the Alien Property Custodian under the Trading with the Enemy Act, Kohn v. Jacob & Josef Kohn, D.C., 264 F. 253; and that the Alien Property Custodian's determination that a certain amount was a debt is conclusive for the purposes of a proceeding under Section 17 of the Act, Miller v. Rouse, D.C., 276 F. 715.

My conclusion is that respondent may not, in the present proceeding, question the Alien Property Custodian's determination that the sum of $25,000 is property that was vested in him by Vesting Orders Nos. 77 and 80. If a mistake has been made by the Alien Property Custodian in his determination, respondent is not without a remedy; Section 9 of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 9, provides a procedure for the recovery of property which has been erroneously seized, and Section 34 of the Act, 50 U.S. C.A.Appendix, § 34, provides a procedure for satisfying, out of enemy property vested by the Custodian, debts owed to American citizens by enemies.

Petitioner's motion to strike respondent's answer is granted, and an order may be submitted directing respondent to deliver to petitioner the sum of $25,000 with interest thereon from September 5, 1942.