CLARK, Atty. Gen. v. MANUFACTURERS TRUST CO.

No. 216, Docket 20924.

Circuit Court of Appeals Second Circuit.

Aug. 5, 1948.

CLARK, Circuit Judge, dissenting in part.

Newman & Bisco, of New York City (Leonard G. Bisco and Henry Landau, both of New York City, of counsel), for appellant.

David L. Bazelon, Asst. Atty. Gen., John F. X. McGohey, U. S. Atty., of New York City, for the Southern District of New York, Max Isenbergh, Sp. Asst. to the Atty. Gen., and Joseph W. Bishop, Jr., of Washington, D. C., Attorney, Department of Justice, for appellee.

Before SWAN, CLARK and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal by Manufacturers Trust Company, for brevity hereafter called the Bank, from an order entered in a proceeding brought under § 17 of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 17, to compel payment to the Attorney General of a debt of $25,581.49 alleged to be owed by the Bank to Deutsche Reichsbank, a German national. The proceeding was commenced in October 1947 by an order to show cause and a petition which alleged the existence of the debt, the issuance by the Alien Property Custodian of a vesting order and a turn-over directive, and the Bank's refusal to comply therewith.[1] The Bank's answer denied the existence of the alleged debt because the Deutsche Reichsbank was indebted to the Bank in a sum in excess of $25,581.49. The answer also asserted that the Bank's right to apply the depositor's balance against the depositor's indebtedness amounted to a possessory lien within section 8 of the Act, 50 U.S.C.A. Appendix, § 8. Upon the pleadings and the exhibits attached thereto, the court entered the order before us on appeal. It directs the Bank to pay the Custodian the sum of $25,581.49 with interest thereon at 6% per annum from January 30, 1947, plus costs. No opinion was written by the district judge.

From the pleadings and attached exhibits the following facts appear: In October

[1] By Executive Order No. 9788 of October 14, 1946, 11 F.R. 11981, 50 U.S. C.A.Appendix, § 6 note, the Attorney General succeeded to the rights, powers and duties of the Alien Property Custodian. In this opinion the term "Custodian" will be used to refer either to the Alien Property Custodian or to the Attorney General as his successor without discriminating between them.

1941 the Bank reported to the Secretary of the Treasury that as of June 14, 1941 a demand deposit of some $39,000 stood to the credit of Reichsbank Direktorium, of Berlin, Germany, and that the Reichsbank was not indebted to it. On February 1, 1946, the Custodian issued Vesting Order No. 5791 which described the property thereby vested as "That certain debt or other obligation owing to Deutsche Reichsbank by Manufacturers Trust Company, 55 Broad Street, New York, N. Y., arising out of a dollar account entitled Reichsbank Direktorium Divisen Abteilung, and any and all rights to demand, enforce and collect the same." Vesting Order No. 5791 found that Deutsche Reichsbank was a German national but made no determination as to the amount of the debt owing to it. By letter dated April 8 ,1946 the Bank acknowledged receipt of the Vesting Order, admitted that a balance of $25,581.49 "stood to the credit of the Deutsche Reichsbank account with us as of the date of the Vesting Order" but asserted that no credit balance is available because on that date the Deutsche Reichsbank was indebted to it in a sum far in excess of said balance on an obligation which had long been past due. The nature of that obligation is set forth in the Bank's answer which alleges that the indebtedness of the Deutsche Reichsbank arose from the fact that it was, "upon information and belief," an instrumentality and part of the German Government; that the German Government guaranteed to the Bank the payment of debts of various German banks and that their indebtedness to the Bank on June 14, 1941 was in excess of $25,581.49. By a Turnover Directive which was served on the Bank on January 30, 1947, the Custodian determined that at the time of the issuance of Vesting Order 5791 the Bank owed Deutsche Reichsbank $25,581.49, that "there are no valid offsets or counterclaims to said sum," that said sum is property which "is now" in the Bank's possession or control that was vested in the Custodian; and the Custodian made demand that such property be forthwith turned over to him. After the Bank refused to comply, the present proceeding was instituted on October 29, 1947.

This appeal presents several interesting questions upon which there is surprisingly little direct authority. A suit under § 17 of the Act is a summary proceeding to compel delivery of possession of enemy-owned property which has been effectively seized by a valid vesting order. The appellant concedes, as it must, that a debtor must pay to the Custodian an acknowledged debt regardless of any controversy as to who is the creditor. American Exchange National Bank v. Garvan, 2 Cir., 273 F. 43, affirmed sub nom. Simon v. American Exchange National Bank, 260 U.S. 706, 43 S.Ct. 165, 67 L.Ed. 474. This imposes no hardship, since the debtor is protected by § 7(e) from pursuit by any other person. But when the existence of the debt is denied, the appellant contends that requiring it to be paid before judicial determination of the dispute, in effect permits the Custodian to create the debt by his ex parte determination and to seize property of the putative debtor which is not owed to the enemy or to any one else. The consequences of giving the Custodian such a power are exceedingly drastic; the alleged debtor may have to sell property in order to obtain the money necessary to make the payment, and the loss so sustained is not remediable by a suit under § 9 for its return.

Section 7(c) provides that "If the President shall so require any money * * * owing * * * to * * * an enemy * * * which the President after investigation shall determine is so owing * * * shall be * * * paid over to the Alien Property Custodian, or the same may be seized by the Alien Property Custodian; * * *" Despite the breadth of this language Judge Learned Hand was of opinion that it "must be confined to debts whose validity and extent the debtor acknowledges," and supported his view with most cogent reasons. Simon v. Miller, D.C.S.D.N.Y., 298 F. 520, 524. In opposition to this interpretation, the Custodian relies on Camp v. Miller, 5 Cir., 286 F. 525 and Clark v. E. J. Lavino & Co., D.C.E.D.Pa., 72 F.Supp. 497. In the Camp case the maker of a $15,000 note resisted the Custodian's demand for payment upon the ground that the enemy-own-

er of the note had agreed that it was to be paid off in German marks, and therefore a lesser sum was due than the Custodian claimed. But the court held that the sum demanded must be paid and the debtor must seek relief under § 9 of the Act. In the Lavino case, the debtor admitted that $25,000 was owed to an enemy but claimed the right to set off an unliquidated claim for loss of cargo. The court held that in a suit under § 17, the set-off could not be asserted, and relegated Lavino to a suit under § 9. The result, the appellant concedes, was right because the debts were not "mutual," as required in set-off, but the court's reasoning is disagreed with by the appellant, as is also the decision in Camp v. Miller, supra.

■ If the putative debtor denies the existence of any debt whatever, we should hesitate to hold that the Custodian's power extends so far as to make his ex parte determination that there is a debt and the amount of it conclusive in a proceeding under § 17. To so hold would mean that the Custodian can by his own ex parte action call property into existence for purposes of seizure. But the question in that bald form is not before us for decision. Here the Bank acknowledges that it became indebted to the Deutsche Reichsbank in the sum of $25,581.49, but asserts a right of set-off arising out of independent transactions between itself and the German Government. Its right of set-off, if any, depends upon an allegation upon "information and belief" that the Reichsbank "was an instrumentality and part of the German Government." Thus the issue tendered is not as to the existence of the debt demanded by the Custodian, but whether an independent claim may be used as a set-off. It is argued that by New York law applicable to the settlement of mutual accounts, between a bank and its depositor, the bank's obligation is reduced to the extent of the set-off so that only the remaining balance is the actual debt owing. It is true that there are cases containing language to this effect. Thus, in Long Beach Trust Co. v. Warshaw, 264 N.Y. 331, 334, 190 N.E. 659, 660, the opinion states: "It is only the balance which is the real or just sum owing by or to the insolvent."[2] This language is appropriate to the cases where it was used but would seem to have little bearing on the question now before us. At common law a defendant was not allowed to set up any cross claim against a plaintiff by way of set-off or counterclaim. A restricted right of set-off was developed in equity and finally by statute set-off was allowed in all cases. Technically, a set-off at law is a money demand independent of and unconnected with the plaintiff's cause of action. Otto v. Lincoln Savings Bank, 268 App. Div. 400, 402, 51 N.Y.S.2d 561, affirmed 294 N.Y. 798, 62 N.E.2d 236. Hence the assertion by the Bank of a right of set-off is not a denial of the Reichsbank's claim for the amount of its deposit. Consequently, we believe that, in harmony with the principle that an admitted debt owed to an enemy must be paid over, the Custodian was entitled to recovery and the Bank must have recourse to § 9 to litigate its asserted right of set-off.[3]

■ The appellant further contends that under section 8 of the Act[4] it has a possessory lien on the credit balance of its

[2] See also Gerseta Corp. v. Equitable Trust Co., 241 N.Y. 418, 424, 450 N.E. 501, 43 A.L.R. 1320; Kress v. Central Trust Co., 246 App.Div. 76, 79, 283 N.Y.S. 467, affirmed, 272 N.Y. 629, 5 N.E.2d 365.

[3] We do not think this conclusion is necessarily inconsistent with Simon v. Miller, D.C.S.D.N.Y., 298 F. 520, 521. From the statement of facts it appears that Simon "had had financial dealings with a German subject, one Albert, which had not then, and never have, been stated between them." It is possible that the transactions were so related that neither party would become indebted to the other without an accounting. If so, the situation there considered by Judge Learned Hand did not involve a set-off of claims arising from independent transaction, as in the case at bar.

[4] Sec. 8: "Any person not an enemy or ally of enemy holding a lawful mortgage, pledge, or lien, or other right in the nature of security in property of an enemy or ally of enemy which, by law or by the terms of the instrument creating such mortgage, pledge, or lien, or right, may be disposed of on notice or presentation or demand, * * * may continue to hold said property, and, after default, may dispose of the property in accord-

depositor, the Reichsbank, which it is entitled to retain against the Custodian. The Custodian argues that section 8 was designed not to protect lienors from the temporary dispossession to which all holders of enemy owned property are subject, but to ensure that an American holder of a possessory lien might, in a suit under § 9, recover not merely the value of his equity in the property, but actual possession of the whole of the property.[5] But the correctness of the Custodian's argument in this respect need not be decided. In our opinion the Bank's right of set-off is not a "lien or other right in the nature of security in property of an enemy," within the meaning of the statutory language. Although sometimes referred to as a "banker's lien," the right of set-off is not technically a lien,[6] and certainly not a lien in property of an enemy, for the deposit of money in a bank passes title to the money and creates the ordinary debtor-creditor relationship. A creditor has no possessory lien on the general assets of his debtor. The reference in § 8 to "property * * * which, by law or by the terms of the instrument * * *, may be disposed of on notice or presentation or demand," makes it quite plain, we think, that the security interests protected are those in specific property which may have been hypotheticated by pledge, mortgage, etc., or otherwise subjected to a possessory lien, but does not cover property constituting the general assets of a debtor against which the enemy asserts only a claim as a creditor.

The appellant's final contention is that the court erred in allowing interest from January 30, 1947, the date of service of the turn-over directive. The Trading with the Enemy Act contains no provision for the payment of interest or any other penalty in the event of non-compliance

with the Custodian's demand that enemy-owned property be turned over to him. The summary procedure provided by § 17 enables the Custodian, without delay if he immediately invokes it, to obtain an order directing compliance. Such an order directing payment of the sum demanded will doubtless bear interest under the general statutes dealing with interest on judgments. But we see no reason to suppose that Congress intended the Custodian to get interest during the period elapsing between his demand for payment and the entry of judgment. No authority allowing it has been called to our attention. The cases relied upon by the appellee involve taxes or advances where the right to the money was finally adjudicated. Here the only right adjudicated is the right to hold possession; if the Bank shall succeed in a § 9 suit in establishing its claim of set-off the Custodian will have to return what he collects. A majority of the court believes there was an error in allowing interest amounting to $1354.68. Judge Clark, however, believes that, since the defendant took upon itself the decision to detain the money without legal right, and had the use thereof during the period of detention, the usual rule of interest on illegally withheld payments should apply.

The order is modified by striking out this interest item and in other respects is affirmed. No appellate costs are awarded.

FRANK, Circuit Judge, concurring in the result.

I think we should hold no more than this: Assuming, arguendo, that an unequivocal claim by appellant of mutual debts would have called for reversal, we affirm because appellant's answer made no such claim; it merely alleged "upon information and belief" (1) that the Reichs-

---

ance with law * * * *Provided,* That no such rule or regulation shall require that notice or presentation or demand shall be served or made in any case in which, by law or by the terms of said instrument or contract, no notice, presentation, or demand was, prior to the passage of this Act, required; * * * *Provided further,* That if, on any such disposition of property, a surplus shall remain after the satisfaction of the mort-

gage, pledge, lien, or other right in the nature of security, notice of that fact shall be given to the President pursuant to such rules and regulations as he may prescribe, and such surplus shall be held subject to his further order."

[5] See H. Rep. No. 85, 65th Cong. 1st Sess. p. 3; S. Sep. No. 113, 65th Cong. 1st Sess. p. 8.

[6] See 38 Harv.L.Rev. 800.

bank was an instrumentality and part of the German government and (2) that that government owed appellant an amount in excess of the amount of the Reichsbank's deposit; as against the custodian such an allegation is insufficient in an action like this.

CLARK, Circuit Judge, dissents as to the modification for denial of interest and concurs as to the remainder of the opinion.