In the Matter of the Accounting of THOMAS YOUNG, as Trustee under the Will of ALICE M. YOUNG, Deceased.

Surrogate's Court, New York County, January 15, 1953.

*Myles J. Lane, United States Attorney for the Southern District of New York* (*Lawrence G. Green* of counsel), for James P. McGranery, Attorney General of the United States, as successor to the Alien Property Custodian, petitioner to compel an accounting and respondent in accounting proceeding.

*Charles L. Fleming* for trustee, petitioner in accounting proceeding and respondent in proceeding to compel accounting.

*Joseph C. Hogan,* special guardian for Gunter C. Muller and others, infants, and on behalf of unknown persons, respondents.

COLLINS, S. This proceeding for the settlement of the accounts of the trustee was initiated upon the application of the Attorney General of the United States acting in his capacity as successor to the Alien Property Custodian (Trad-

ing with the Enemy Act, U. S. Code, tit. 50, Appendix § 6; Executive Order, No. 9788, 11 Federal Register 11981). The Attorney General reciting the fact that orders vesting the right and title of persons interested in the trusts had previously been executed and issued by the Alien Property Custodian, instituted a proceeding for a compulsory accounting, a decree fixing the commissions and administration expenses of the trustee and a direction that he deliver to the petitioner '' the corpus and net income of each of the several trusts herein.'' That proceeding has been consolidated with the present accounting in which the issue as to the right of the Attorney General to the delivery of the assets in the hands of the trustee is renewed by the objections to the account.

Alice M. Young died on August 15, 1943, leaving a will admitted to probate in this court on November 12, 1943. She directed that her residuary estate be divided into four parts, one of which she left outright to her husband, the accounting trustee. The other three shares she left in separate trusts for the benefit of her two sons and daughter, for their lives, directing in each instance that the remainder upon the death of the life beneficiary was to pass '' to his—(or her)—heirs at law and next of kin ''.

On June 21, 1946, the Alien Property Custodian '' after a determination duly made that they were residents and nationals of an enemy country (Germany) issued Vesting Order No. 6710 (11 Federal Register 7822), vesting all right, title, interest and claim of any kind or character '' (Petition for compulsory accounting, p. 3) of the daughter and sons of the testatrix and their respective heirs at law and next of kin. Thereafter, in a proceeding to which the Attorney General was a party for the settlement of the account of the executor, the latter was directed to turn over to himself as trustee the property comprising the principal of the three trusts and to pay the income therefrom as received to the Attorney General as successor to the Alien Property Custodian. In a subsequent proceeding, to which the Attorney General was also a party, for the settlement of the intermediate accounts of the trustee, he was again directed to continue to make payment of the income to the Attorney General and to retain the principal of the trusts in his possession for administration in accordance with the provisions of the will. It should be noted that in neither of these proceedings was any demand made by the Attorney General for delivery of the corpora nor did he object to the court's directions heretofore described.

On December 19, 1951, some five years after the promulgation of the vesting order the Attorney General caused to be issued a so-called "Turn-Over Directive" addressed to the trustee and demanding the immediate delivery of the property comprising the principal of the three trusts. Upon the advice of his attorneys the trustee declined to comply with the demand and he was shortly thereafter met with the proceeding to compel him to account.

Putting aside for the moment consideration of the effect of the Turn-Over Directive, attention must first be turned to the order vesting the right, title and interest of the three life beneficiaries and their respective heirs at law and next of kin named as the remaindermen of the separate trusts. It is axiomatic in the law of estates that " a living person can have no heirs " (*Matter of Kingsbury,* 192 App. Div. 206, 212, affd. on opinion below 230 N. Y. 580; *Livingston* v. *Greene,* 52 N. Y. 118; *Heath* v. *Hewitt,* 127 N. Y. 166, 170). It is therefore somewhat difficult to comprehend the process involved in the finding, essential under the Trading with the Enemy Act to the exercise of the custodian's right to vest, that the particular heirs at law of the three living beneficiaries were not only readily identifiable but were in fact " residents and nationals of an enemy country (Germany)." (Executive Order, No. 9095, as amd. by Executive Order No. 9193, § 2, subd. [c]).

If, therefore, the question at issue in this proceeding was confined to the operative effect of the vesting order it is plain that the court would have had to hold that the custodian had not succeeded in vesting all of the outstanding beneficial interests under the trust and that consequently he was not entitled, as against the trustee, to possession of the assets comprising the principal. Three of the cases on which the Attorney General relies as calling for a different result were all decided in this court and are readily distinguishable. In *Matter of Sandhagen* (200 Misc. 847); *Matter of Kuhirt* (N. Y. L. J., May 9, 1949, p. 1653, col. 3); and *Matter of Herrman* (N. Y. L. J., March 18, 1949, p. 997, col. 1), it was held that where all of the outstanding beneficial interests under a trust were validly vested the custodian was entitled to the possession of the principal and the trust itself perforce was brought to an end. A like result was reached in *Central Hanover Bank & Trust Co.* v. *Markham* (68 F. Supp. 829 [S. D., N. Y.]). However, a wholly different situation obtains in the case at bar as has been previously pointed out, for in vesting the interest of the heirs at law of living people, the Attorney General acquired no rights

which could be enforced against the trustee because neither this court nor anyone else could possibly identify at the present time the person or persons in whom such rights reside.

It is well established that a vesting order confers upon the custodian a title identical in quality and quantity with that of the person whose interest is seized (*Chase Nat. Bank* v. *McGrath,* 76 N. Y. S. 2d 63, affd. 276 App. Div. 831, affd. 301 N. Y. 602; *Matter of Saalberg,* 190 Misc. 966). As was said in *Kahn* v. *Garvan* (263 F. 909, 912, HAND L., J.): "Upon these assumptions, it is necessary briefly to consider the nature of the 'right, title, and interest' which was the subject of the putative capture. It did not profess to be greater than the right of the enemies as cestuis que trustent, and it did not in law change the substance, or the incidents, of the right itself, any more than if, for example, it had been an unliquidated claim for breach of contract. Nor, indeed, could the Alien Property Custodian under such a demand, or unless he asserted a legal right to the securities themselves, by capture change the character of the enemy's right as obligee. If it be a chose in action, subject to an accounting as a condition of its assertion, he must submit to some judicial determination between himself, as captor, and the trustee as obligor. Such a demand neither enlarges nor contracts the rights seized."

In the light of these principles it would clearly appear that the vesting of the right, title and interest of the heirs at law and next of kin of the life tenants of the respective trusts would not operate to extinguish the rights in these trusts of those persons, perhaps as yet unborn, who will presumably qualify for membership in the class named to take the remainder.

We come now to a consideration of the so-called "Turn-Over Directive." This instrument recites the finding of alienage, heretofore shown to be erroneous, and demands of the trustee the immediate delivery of the assets comprising the principal of the trusts. Here a different situation prevails, for unlike the vesting of right, title and interest, in the case of a Turn-Over Directive, as in the case of a vesting of the *res,* the court has no power to disturb the finding and no alternative except to direct compliance with the demand (*Zittman* v. *McGrath,* 341 U. S. 471; *Kahn* v. *Garvan, supra; American Exch. Nat. Bank* v. *Garvan,* 273 F. 43, affd. 260 U. S. 706, *sub nom. Simon* v. *American Exch. Nat. Bank*).

There is no necessity for an extended discussion by this court of the principle embodied in the Trading with the Enemy Act and the Executive Orders promulgated under it. In the *Zitt-*

*man* case the court, pointing out the clear distinction between a vesting of right, title and interest and a '' Turn-Over Directive '' went on to say (pp. 473–474):

'' In these cases the Custodian pursued a different course, not only in that he served on the Federal Reserve Bank a ' turnover directive,' but also in that the relief asked in this case omits any request for a declaration that the attachments are invalid. He asks a decree only that the Custodian is ' entitled to possession ' of the accounts in their entirety. In other words, in the actions involving the Chase Bank the Custodian stepped into the shoes of the German banks and sought to free their titles of the state liens; here he seeks to step into the shoes of the Federal Reserve Bank as possessor of the credits and funds, leaving unadjudicated the effect of such substitution of custody upon the attaching creditors' rights.

'' While the statute under which the funds are to be ' held administered and accounted for ' authorizes the vesting of such foreign-owned property in the Custodian and its administration ' in the interest of and for the benefit of the United States,' it is not a confiscation measure, but a liquidation measure for the protection of American creditors. It provides for the filing and proving of claims and states that the funds ' shall be equitably applied ' for the payment of debts. If the Custodian disallows a claim, or if he disallows a claim of priority where claims exceed assets, the claimant may seek relief in the United States District Court for the District of Columbia. The transfer of possession of these funds does not purport to work any automatic deprivation of rights of any class of creditors, but takes over the estate for administration.

'' In view of these facts, we decide, and decide only, that the Custodian has power to possess himself of these funds and to administer them. To hold otherwise would be incompatible with the federal program. The consequences, if any, that flow from the substitution of the Custodian in place of the Bank as holder of the funds, upon rights derived from valid state court judgments secured by attachment, are not ripe for determination. They may never come into controversy. All questions as to the petitioners' claims, judgments or priorities are reserved for decision in the proceedings prescribed by statute.''

The same principle was asserted by Judge HAND in his decision in *Kahn* v. *Garvan* (263 F. 909, *supra*), cited earlier, where he said (p. 912): '' Nor, indeed, could the Alien Property Custodian, under such a demand, or *unless he asserted a legal right*

*to the securities themselves,* by capture change the character of the enemy's rights as obligee.'' (Italics supplied.)

This court's direction to the trustee to comply with the demand contained in the Turn-Over Directive in no way constitutes an adjudication of the rights of the beneficiaries of the trusts. There is no dispute as to the validity of the seizure of the interests of the life tenants but very grave questions arise as between the Attorney General on the one hand and the trustee representing the remaindermen on the other. The Trading with the Enemy Act provides a means of determining those questions by suit in the Federal courts under subdivision (a) of section 9 (U. S. Code, tit. 50, Appendix). The court suggests to the trustee the desirability of his resorting to that remedy as promptly as possible. In view of the fact that the petition of the Attorney General requests the fixation and payment of the expenses of the trustee, the court will entertain an application to fix a reserve from the funds in the trusts to finance the litigation as an expense of administration.

The specific demands by the Attorney General in his petition, answer and amended objections are disposed of as follows: The motion to strike out the appearance of the special guardian for remaindermen whose interests were allegedly vested is denied for even had the interests of such persons been vested *in toto* they would still be proper if not necessary parties to the proceeding (*Matter of Schultz,* 180 Misc. 1023, affd. 268 App. Div. 966). The special guardian is accordingly directed to file his report addressed to the account as promptly as possible.

The demand to enjoin the trustee from taking any action under or in furtherance of the voting trust agreement to which he became a party as the holder of 1,503 shares of the stock of The National Provisioner Inc. is denied, the court holding that the question can better be decided in the suit in which ownership will be determined as between the Attorney General and the trustee.

After the report of the special guardian has been filed a decree may be submitted on notice settling the account and directing the turn-over of the principal of the trusts to the Attorney General in accordance with the demand made in the Turn-Over Directive issued on December 19, 1951. The decree, as has been indicated may contain appropriate provision for the payment of the expenses of this proceeding, the expenses of administration reflected in the account, as well as for a reserve for the payment of the expenses which will arise in any future litigation. The decree is also to recite expressly that none of

the rulings here made constitutes an adjudication of the rights of the beneficiaries of the trust except as to the life tenants whose interests have been extinguished by vesting Order 6710. (11 Federal Register 7822.)

Proceed accordingly.