BROWNELL, Atty. Gen.

v.

KERMATH MFG. CO.

Civ. A. No. 9657.

United States District Court
E. D. Michigan, S. D.

March 31, 1954.

Rodney C. Kropf, Asst. U. S. Atty., Fred W. Kaess, U. S. Atty., Detroit, Mich., for plaintiff.

Goddard, McClintock, Fulton & Donovan, Detroit, Mich., for defendant.

KOSCINSKI, District Judge.

This action was filed on August 14, 1950 to compel compliance by defendant with a vesting order of the Attorney General executed on October 15, 1948, under the authority of the Trading with the Enemy Act, as amended, 40 Stat. 411, 50 U.S.C.A.Appendix, § 1 et seq., vesting in the Attorney General of the United States a debt "owing to Motor Boat Company, Ltd., by Kermath Manufacturing Company", the said Motor Boat Company, Inc., being a national of Japan, a designated enemy country.

In its original answer to plaintiff's complaint filed in this cause, admitting filing of reports to the Treasury Department and to the Alien Property Custodian that defendant held a credit balance of $61,000 in favor of Motor Boat Company, Inc., defendant invoked, by way of affirmative defense, the Statute of Limitations as a bar to plaintiff's cause of action.

Thereafter an amended answer was filed in which two affirmative defenses are asserted, (1) that the credit balance was held by defendant with the assumption and understanding that it would be used by Motor Boat Company for the purchase of merchandise from defendant and would produce a profit of $12,000 to defendant and that, consequently, defendant is entitled to the sum of $12,000 by way of a counterclaim, and (2) that the credit balance arose as a result of a contract between defendant and Motor Boat Company which was illegal, unlawful, and void under the laws of the State of Michigan and Japan.

Depositions were then taken of a former officer and employee of defendant who participated, on behalf of defendant, in negotiations and transactions with Motor Boat Company resulting in the accumulation of the credit balance. His testimony disclosed that there was no agreement whatsoever between Motor Boat and defendant for absorption of

the credit balance by future orders for merchandise. In view of this testimony upon trial of this cause defendant relied solely upon the second affirmative defense in the amended answer.

Defendant admits that the usual suit under section 17 of the Trading with the Enemy Act, under which the present action was filed, is a summary proceeding to compel delivery of possession of enemy owned property seized by a vesting order and that rights of claimants to such property must be left for later determination; it concedes also that a debtor must pay to the Alien Property Custodian an acknowledged and undisputed debt regardless of any controversy as to who is the creditor. It urges, however, that in at least two situations the court must necessarily determine what interest, if any, the enemy alien had in the property sought to be seized by the Government before it will compel compliance with the vesting order:

1. Cases in which the vesting order vests the "right, title, interest and claim" of a designated person in a res; and

2. Cases in which the order vests a debt but the purported debtor denies the existence, validity, or extent of the debt.

Defendant takes the position that this case is analogous to cases in the first category in which the Attorney General takes only the interest actually owned by the enemy; that the sum which plaintiff seeks to recover is essentially the profit of an illegal transaction to defraud the Japanese Government, committed through the concerted action of this defendant and Motor Boat Company, Inc.; that courts will not enforce a contract between parties to a fraudulent arrangement; that by the vesting order plaintiff acquired only such rights as Motor Boat Company had against defendant and, since the defense of illegality would preclude the existence of a valid enforceable debt owing to Motor Boat Company, it should also be available against plaintiff herein who stands in the shoes of the

Motor Boat Company. The fact that it denies the existence of an enforceable debt places this action, according to defendant, also in the second category of claimed exceptions.

The court, having heard the evidence submitted at the trial and considered the arguments and briefs of counsel for the parties, finds the facts and states the conclusions of law as follows:

### Findings of Fact

1. Defendant, Kermath Manufacturing Company, during the period of time herein involved, was a Michigan corporation engaged in the production of marine engines, parts, and accessories therefor.

2. For some time prior to the year 1938 the Motor Boat Company, Ltd., of Tokyo, Japan, was the distributor and dealer for defendant's products in Japan, making periodical purchases from it and reselling its products within Japan.

3. At various times between January 1938 and April 1938 the Motor Boat Company purchased and received delivery of 50 diesel engines with spare parts from defendant, Kermath Manufacturing Company, to fill an order in Japan. There is some indication that the ultimate purchaser in Japan was a department of the Japanese Government.

4. Motor Boat Company effected transfer of funds to New York by means of four letters of credit from the One Hundredth Bank of Japan and forwarded to the Chase National Bank in New York City; the total amount of these letters of credit exceeded by $61,687.25 the price of the engines and parts quoted by defendant to Motor Boat Company.

5. By pre-arrangement with Motor Boat, defendant submitted to the Chase National Bank invoices for motors and parts in amounts exceeding the actual price quoted to Motor Boat Company, to effect release of all the funds held by the Chase National Bank, and on April 25, 1938, furnished to the Motor Boat Com-

pany a certification, duly notarized, which read as follows:

"This is to certify that the Motor Boat Company Ltd. of Tokyo, Japan has with the undersigned a credit balance of Sixty One Thousand Six Hundred Eighty Seven and 25/100 ($61687.25) Dollars U S Funds arising from shipments for their account under Letters of Credit Nos 95052–95053–95054 and 95055.

"Kermath Manufacturing Co.

"(signed) A. B. Garvey, Cashier"

6. Motor Boat Company was provided by defendant with two sets of invoices, one set for the increased price and the other for the actual price as quoted.

7. In August, 1949, upon written instructions of Motor Boat Company, defendant paid the sum of $687.25 to a representative of Motor Boat Company, which sum was debited by defendant against the credit balance, thereby reducing the credit balance to $61,000.

8. In July 1939, through another representative of Motor Boat Company then in the United States, that company attempted to effect a transfer of the $61,000 to Holland but defendant demanded from Motor Boat Company, before it would release the fund, sworn documents to the effect that Kermath Manufacturing Company was not willing to be used in any way to facilitate any violation of Japanese foreign exchange regulations by the distributor, Motor Boat Company; that Motor Boat Company had not in any way used the invoices for transactions with defendant to effectuate any violation of the Japanese foreign exchange laws; and that the buyer of the motors from the distributor was fully informed of the actual price with discounts paid or to be paid by Motor Boat Company to defendant.

9. Before Motor Boat Company's representative returned to Japan, war broke out between Germany and Poland, England and France and Motor Boat Company thereupon and as a result of this contingency informed defendant that it should continue to keep the fund for it as it would be inadvisable to transfer the fund to Holland at that time. There was no change in this situation until the outbreak of the war with Japan.

10. Defendant had no arrangement, understanding or agreement with Motor Boat Company, Ltd., relative to satisfaction or payment of the credit balance and no payment, other than heretofore stated, has in fact been made.

11. On August 5, 1942 defendant reported to the Secretary of the Treasury on Form TFR–300 that it had a credit balance in accounts payable in favor of Motor Boat Company, Ltd., in the amount of $61,000; its relationship to Motor Boat Company was described in the report as that of "debtor"; it was also stated in the report that no persons other than the national (Motor Boat Company, Ltd.) had any interest of any nature whatsoever, direct or indirect, in such property, and that there were no adverse or other claims, including any legal actions or proceedings whatsoever, in relation to said property. The report was signed under oath by defendant's president.

12. In explanation of this credit defendant, by letter dated November 29, 1943, informed the Division of Investigation and Research of the Office of the Alien Property Custodian, that it sold marine engines, parts and accessories to Motor Boat Company; that in addition to paying for the list price of this merchandise Motor Boat Company also advanced to defendant an additional cash sum of $61,687.25 which was credited on defendant's books in favor of the Motor Boat Company, Ltd., in the month of April, 1938; that thereafter defendant paid $687.25 of this sum to a representative of Motor Boat and the balance of $61,000 still remains on its books as a credit to the Motor Boat Company although this account has been blocked pursuant to instructions from the United States Treasury Department; that it is

not believed there was ever any express understanding between defendant and Motor Boat Company as to the exact disposition of these funds but in view of past relations it was assumed the funds were advanced to apply against future purchases, although no part of this credit was ever employed so as to transfer ownership of any specific property to Motor Boat Company and defendant never segregated or earmarked any marine engines or other products as an offset against this credit.

13. On Form APC–56, dated July 19, 1948, defendant reported to plaintiff that it held a credit balance in accounts payable in favor of Motor Boat Company, Ltd. This report, also under oath, was signed by defendant's general manager.

14. Thereupon Vesting Order No. 12209 was executed by plaintiff on October 15, 1948, vesting "that certain debt or other obligation owing to Motor Boat Company, Ltd. by Kermath Manufacturing Company * * * in the amount of $61,000.00, as of July 19, 1948, and all accruals thereto, and any and all rights to demand, enforce and collect the same."

15. Plaintiff made demand upon defendant for payment of the $61,000 by virtue of the vesting order, but defendant has not complied with said demand. Refusal to so comply resulted in the filing of the present suit.

### Discussion

■■ The Trading with the Enemy Act creates powerful and swift executive and summary procedure particularly for the seizure of the property of enemies by legal process as an alternative to seizure by military force. McGrath v. Manufacturers Tr. Co., 338 U.S. 241, 246, 70 S.Ct. 4, 94 L.Ed. 31. Section 17 thereof confers jurisdiction upon district courts of the United States to enforce the provisions of the Act. A demand by the Alien Property Custodian for property of the enemy effects an immediate seizure of the property and a proceeding under Section 17, after failure to comply with the demand, is not one to make a seizure but only to enforce a seizure already made. In re Miller, 2 Cir., 281 F. 764, appeal dismissed Schaefer v. Miller, 262 U.S. 760, 43 S.Ct. 519, 67 L.Ed. 1220.

■ A suit under Section 17 is a summary possessory proceeding and does not, as a general rule, involve adjudication of title to the property. In the case of Commercial Trust Co. of New Jersey v. Miller, 262 U.S. 51, 56, 43 S.Ct. 486, 67 L.Ed. 858, the court stated that the suit is of a peremptory character as "seizure in pais" and is the dictate and provision for the emergency of war, not to be defeated or delayed by defenses, its only condition, therefore, being the determination by the Alien Property Custodian that it was enemy property; and that the act recognized, by implication, that mistakes may be made but assumes that the transfer will take place whether right or wrong, hence it provides for an exercise of government but also provides redress for mistakes in its exercise, by claimant of the property filing a claim under Section 9 of the Act which, if not yielded to, may be enforced by suit.

In the case of McGrath v. Manufacturers Tr. Co., supra, the court, determining that actions under Section 17 are summary possessory suits, enumerates the special procedures provided to try merits of claims to property seized in such summary possessory suits. Sections 9, 32, 34, of the Act, Sections 9, 32 and 34 of Title 50 U.S.C.A.Appendix. It quotes from the case of Stoehr v. Wallace, 255 U.S. 239, 41 S.Ct. 293, 65 L.Ed. 604: " 'There is no warrant for saying that the enemy ownership must be determined judicially before the property can be seized; and the practice has been the other way.' " See footnotes 7 and 8 on pages 246, 247, of 338 U.S., on page 7 of 70 S.Ct.

A tendency to recognize defenses to the Custodian's power of summary seizure in exceptional situations has been reflected, however, in a few recent decisions. At least such decisions cast some

doubt upon the Custodian's power of summary seizure in all situations and under all circumstances. In Clark v. Manufacturers Trust Co., 2 Cir., 169 F. 2d 932, certiorari denied 335 U.S. 910, 69 S.Ct. 480, 93 L.Ed. 443, the court recognized the well-settled proposition that a debtor must pay to the Custodian an undisputed debt but, by way of dictum, indicated a hesitation to hold that the Custodian's power to seize money which he determines to be owing to an enemy extends to a debt, the validity or extent of which the debtor does not acknowledge. The court expresses the view that the consequences which such power might entail were exceedingly drastic; specifically, that there is a possibility that one who was in fact not indebted might be compelled hastily to liquidate property in order to satisfy the Custodian's demand and might thereby suffer damage for which the Act provides no remedy. This decision is discussed in Harvard Law Review, Vol. 62, p. 721, wherein the writer minimizes consequences of the power.

The Supreme Court of the United States, in the McGrath v. Manufacturers Tr. Co. case, supra, 338 U.S. at page 249, 70 S.Ct. at page 9, stated that several questions discussed by the parties to the litigation "would have been presented" if the answer had contained a denial of the alleged debt, an unequivocal plea of setoff, or a claim of a lien upon the enemy's interest in the debt or in its proceeds, but did not consider those issues as the answer did not present them. It would appear, therefore, that in the situations mentioned, the court would be inclined to consider defenses to the action, if raised in the answer.

■ Cases involving "right, title and interest" vesting orders, which defendant cites, are inapplicable here. Resort to such vesting orders is had only in cases involving an enemy's interest in a trust, or in an estate, or in similar situations in which the extent of the foreign interest has not been actually determined and is, as yet, incapable of determination. Since the Trading with the Enemy Act extends only to the foreign interest itself, and in practice, only to enemy interests, obviously the Custodian is not entitled to possession of property in which the enemy has only an interest, and to which non-enemies also claim rights, until the exact share of the enemy is determined. Here, the Attorney General vested in himself not the right, title and interest in the debt, but specific property—the debt itself, together with any and all rights to demand, enforce, and collect the same. For a distinction between vesting of specific property and vesting of right, title and interest in property, see Harvard Law Review, Vol. 62, p. 721, and cases therein cited.

■ The equitable considerations which might impel a court to consider defenses, in a summary action under Section 17, to prevent an ex parte creation by the Custodian of a debt where the putative debtor, in good faith, denies its existence, are also entirely lacking in this case. Defendant at all times admitted the existence of the claim or debt but denies only its enforceability by Motor Boat Company. In the report to the Alien Property Custodian it described its relation to Motor Boat Company as that of a "debtor"; it acknowledged that it held a credit balance on its books in favor of Motor Boat, having received cash advances of $61,000 for which it rendered no services and parted with no other consideration. It had the use of this sum since it was collected from the Chase National Bank. Its only objective is to retain this sum, permanently, by a claim that it represents the fruits of an allegedly illegal transaction. The only purpose of the defense is to defeat the claim of the Government and render the fund unavailable for the purposes of the United States, as intended by the Trading with the Enemy Act.

■ Upon the trial of this action defendant attempted to establish illegality of its transactions with Motor Boat Company, by introducing correspondence between it and the Japanese national, as

well as certain provisions of the Japanese law. Even if the defense of illegality were available to defendant, and it is the considered opinion of this court that this case is not one which merits consideration of the defense, defendant has failed to prove the illegality by convincing evidence. Although some irregularity is suggested, sufficient facts have not been introduced to inform the court of the exact nature of the legal violation charged.

Conclusions of Law

1. Vesting Order No. 12209 was validly issued by plaintiff on October 15, 1948, after necessary findings were made and proper procedural steps were taken as required under the Trading with the Enemy Act.

2. A debt is property which may be seized by appropriate federal authority under the Act. For purposes of determining existence of property in the United States subject to seizure thereunder, book entries must be taken as equivalent of the fund represented thereby.

3. Vesting Order No. 12209 resulted in an effective seizure of the property vested, to wit, a debt in the sum of $61,000 owing by defendant, being specific property and not a mere interest therein, and such seizure is enforceable in this court under Section 17 of the Act.

4. Section 17 is a summary possessory proceeding in which the court may compel compliance with the vesting order without determining the question of ownership, under circumstances such as exist in the present suit.

5. Consequently, the defense of illegality of the transaction which gave rise to the fund vested, is unavailable to defendant as against the plaintiff herein; even if such defense had been available, satisfactory proof of illegality has not been adduced.

6. Plaintiff is entitled to judgment for $61,000, with costs and disbursements of this action.