William P. ROGERS, Attorney General of the United States, as Successor to the Alien Property Custodian, Plaintiff,

v.

Ludwig HERTLEIN, Defendant.

Civ. No. 15971.

United States District Court
E. D. New York.
Oct. 31, 1958.

4. See footnote 1.

Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., for plaintiff, Lee B. Anderson, Atty., U. S. Dept. of Justice, Washington, D. C., of counsel.

Luttinger & Passannante, New York City, for defendant, George Luttinger, New York City, of counsel.

ZAVATT, District Judge.

The plaintiff moves for judgment on the pleadings pursuant to Rule 12(c) Rules of Civil Procedure, 28 U.S.C.A. and thereby raises a novel question under the Trading with the Enemy Act of 1917, as amended. 50 U.S.C.A.Appendix §§ 1–40, hereinafter referred to as the "Act". In his complaint in a proceeding instituted under § 17 of the Act, the plaintiff alleges that the defendant became indebted to an enemy of the United States within the meaning of 50 U.S.C.A. Appendix, § 2 in the sum of Two Thousand Eight Hundred ($2,800) Dollars on February 13, 1942 and continued to be so indebted on February 11, 1953 when the plaintiff executed Vesting Order No. 19170 by virtue of which said alleged indebtedness vested in the plaintiff; that said order was made under the authority vested in the plaintiff by the Act and Executive Order No. 9095 (March 11, 1942) 7 F.R. 1971, as amended by Executive Order 9193 (July 6, 1942), 7 F.R. 5205,[1] and Executive Order No. 9788 (Oct. 14, 1946), 11 F.R. 11981;[2] that thereby the plaintiff acquired title to said debt of the defendant to said enemy and the defendant became indebted to the plaintiff therefor; that defendant has failed and refused to pay said debt. The defendant, in his answer, denies any knowledge or information as to the allegation in the complaint that the German company named in the complaint (hereinafter referred to as "Herborn") has its principal place of business in Germany and that it is an enemy of the United States within the meaning of 50 U.S.C.A.Appendix, § 2. He denies that he ever became indebted to Herborn; that the Vesting Order vested the alleged debt in the plaintiff and that by virtue of that order title to said debt is vested in the plaintiff and that defendant became indebted to the plaintiff.

The plaintiff contends that he is entitled to judgment against defendant despite the fact that defendant denies any indebtedness to Herborn and, consequently, to plaintiff; that the plaintiff had the right under the Act to make a de-

1. A copy of this order as so amended is set forth in the footnotes to 50 U.S.C.A. Appendix, § 6.

2. A copy of this order is set forth in the footnotes to 50 U.S.C.A.Appendix, § 6.

termination that defendant is indebted to Herborn and to make a determination that Herborn is an enemy; that plaintiff, having made these two determinations in and by the Vesting Order, his determinations are conclusive, whether right or wrong, and not subject to review by a trial of the issues raised in this action by the defendant's answer; that these determinations having vested title in plaintiff, this action is not one to determine whether there is or is not an indebtedness by defendant to Herborn but, rather, one to recover possession of that which plaintiff has determined to be vested in him; that defendant's only remedy is that afforded by section 9(a) of the Act, i. e. to file with the plaintiff a notice of claim to be processed as provided in the Act or to institute a suit in equity in the District Court of the United States for the district in which he resides to establish his interest, right, title or debt so claimed.

The authority of the plaintiff to reach the property of an enemy is set forth in §§ 5(b) and 7(c) of the Act and Executive Order No. 9193, *supra*. Executive Order No. 9788 is pertinent only in that it terminated the Office of the Alien Property Custodian and the powers of the Alien Property Custodian and transferred to and vested in the Attorney General their powers and duties under the Act. Vesting Order No. 19170 does not specify which of these two sections of the Act, i. e. 5(b) or 7(c), were invoked by that order. Rather it recites that the order was made under the authority of the Act and of certain stated executive orders. This practice has been criticized.[3] However, the failure of the Attorney General to specify the section of the Act invoked by his vesting order is not determinative of the instant motion. The decision of the Court on plaintiff's motion would be the same whether the Attorney General had specified either of these sections of the Act in his vesting order.

The Act is still in effect. Though the state of war between the United States and the Government of Germany terminated on October 19, 1951 by virtue of House Joint Resolution No. 289 and the President's Proclamation No. 2950,[4] the Resolution and the Proclamation provide that the provisions of the Act continue as to any property or interest which was subject to vesting or seizure prior to January 1, 1947.[5] Section 5(b) (1) authorizes the vesting of " * * * any property in which any *foreign country or a national thereof has any interest, * * * "* and it absolves those who make payment to the United States under a vesting order made pursuant thereto. Section 7(a) of the Act requires any person in the United States, who is indebted to any enemy or to any person he may have reasonable cause to believe to be any enemy, to report the fact to the Alien Property Custodian (now the Attorney General) by a written statement under oath. Section 7(c) of the Act authorizes the President (and the Executive Orders hereinabove cited have delegated the authority to the Attorney General) to require that any money or property "owing or belonging to or held for * * * an enemy * * * be * * * paid over to the Alien Property Custodian * * *" and authorizes the Alien Property Custodian to seize any such property. Section 7(c) provides for an "investigation" and a determination which, under the executive orders cited above, are now authorized to be made by the Attorney General. The plaintiff contends that section 7(c) authorizes him to make an investigation and a determination as to (1) whether or not a debt exists, (2) the identity of the debtor, (3) the amount of the debt, (4) the identity of the person to whom the debt is due, and (5) whether

3. The Vesting Powers of the Alien Property Custodian. John Foster Dulles. 28 Cornell L.Q. 245, 258–259.

4. Copies are set forth in 50 U.S.C.A. Appendix, pp. XX, XXI, preceding section 1.

5. Op.Cit. 4.

or not that person is an enemy and that all of said determinations are conclusive. The pertinent portions of section 7 provide as follows:

"(c) If the President shall so require any money * * * owing or belonging to or held for, * * * or for the benefit of, an enemy * * * which the President after investigation shall determine is so owing or so belongs or is so held, shall be * * * paid over to the Alien Property Custodian, or the same may be seized by the Alien Property Custodian;

* * * * *

"Whenever any such property shall consist of shares of stock * * * it shall be the duty of the corporation * * * issuing such shares * * * to cancel upon its * * * books all shares of stock * * * standing upon its * * * books in the name of any person or persons, or held for, * * * or for the benefit of any person * * * who shall have been determined by the President, after investigation, to be an enemy * * * and which shall have been required to be * * * transferred, assigned, or delivered to the Alien Property Custodian or seized by him * * *.

"The sole relief and remedy of any person having any claim to any money or other property * * * transferred, assigned, delivered, or paid over to the Alien Property Custodian, or required so to be, or seized by him shall be that provided by the terms of this Act * * *.

"(d) If not required to pay * * * under the provisions of subsection (c) hereof, any person not an enemy * * * who owes to * * an enemy * * * any money * * *, or to whom any obligation or form of liability to such enemy * * * is presented for payment, may, at his option, * * * pay * * * to the alien property custodian said money * * *.

* * * * *

"Any payment * * * made to the alien property custodian hereunder shall be a full acquittance and discharge for all purposes of the obligation of the person making the same to the extent of the same."

Executive Order 9193 in effect grants to the Alien Property Custodian the authority and power vested in the President under the Act. It, too, speaks of "any property * * * owned or controlled by, payable * * * to * * * any enemy * * * national * * *" and authorizes the Custodian to vest property within the United States "owned or controlled by a designated enemy country or national thereof * * *." Executive Order 9193, § 2. It, too, provides that:

"For the purpose of this Executive Order any determination by the Alien Property Custodian that any property or interest of any foreign country or national thereof is the property or interest of a designated enemy country or national thereof shall be final and conclusive as to the power of the Alien Property Custodian to exercise any of the power or authority conferred upon me by section 5(b) of the Trading with the Enemy Act, as amended." Executive Order 9193, § 10(a).

Section 12 of that Order provides, further:

"No person affected by any order * * * or other action issued or taken by either the Secretary of the Treasury or the Alien Property Custodian shall be entitled to challenge the validity thereof * * * on the ground that pursuant to the provisions of this Executive Order, such order * * * or other action was within the jurisdiction of the Alien Property Custodian rather than the Secretary of the Treasury or vice versa."

In Simon v. Miller, D.C.S.D.N.Y.1923, 298 F. 520, 522, the Alien Property Custodian seized Three Hundred Fifty Thousand ($350,000) Dollars on deposit in a bank to the credit of the plaintiff

458

claiming that plaintiff held it for the benefit of a German subject, Albert. Plaintiff denied that this deposit was so held and brought a proceeding under § 9 of the Act to recover the amount seized by the defendant. The defendant contended that, since plaintiff and Albert had had business transactions between them, he had the power to state the amount ex parte between them and to seize the balance which he determined was due by plaintiff to Albert. Plaintiff contended that defendant had no power to state an amount ex parte and that plaintiff was not bound by such a determination by the defendant.

Judge Learned Hand found that the deposit was not held by plaintiff for the benefit of Albert; that "The enemy must have some present interest in the property to subject it to capture"; that the defendant could not prevail on the theory that the money was held by plaintiff for the benefit of Albert, because he found that Albert did not have any existing interest in the deposit so captured by defendant; that defendant must rely on his alleged power to state an amount ex parte in order to justify the seizure. Judge Hand then proceeded to consider whether the defendant had the power under the Act to determine ex parte that plaintiff owed money to Albert. He considered the following words of section 7 (c) of the Act:

"Any money * * * owing * * * to * * * an enemy * * * which the President after investigation shall determine is so owing * * * shall be * * * paid over to the Alien Property Custodian or * * * may be seized by the Alien Property Custodian."

and remarked that "Taken literally, the words of section 7(c) seem to go so far * * *" i. e. as far as contended by the Alien Property Custodian in that case. Nevertheless, he refused to construe that language strictly.

"The consequences of such a power are excessively drastic, and would indeed be extravagant in operation. * * * It contradicts all our no-

tions of the rights of putative debtors who dispute the debt. * * *

"Nor does it seem to me that any such interpretation is called for by the general purposes of the legislation in question. Captures had a double purpose. They changed the title in any actual rights which the enemy might have in the captured property, and they sequestered the property itself in which those rights might inhere. * * *

"When the language of a statute admits an interpretation which avoids any constitutional question, it should be adopted. Perhaps under the war power Congress might have gone so far, but surely there must be clear expression of such a purpose to overset the traditional methods in analogous cases. I ought not lightly to impute to such general words so oppressive a purpose; the language must be confined to debts whose validity and extent the debtor acknowledges."

In Clark v. Manufacturers Trust Co., 2 Cir., 1948, 169 F.2d 932 the plaintiff instituted a proceeding under § 17 of the Act to compel the defendant to pay to him a sum which plaintiff alleged was due by the defendant to a German national, Deutsche Reichsbank. Plaintiff alleged the existence of the debt, the issuance of a vesting order, a turn-over directive and the refusal of the defendant to comply. The defendant's answer denied the existence of the debt, claiming that the Reichsbank was indebted to the defendant in a sum in excess of the defendant's indebtedness to Reichsbank; that the defendant had the right to apply against the indebtedness of Reichsbank's deposit with the defendant its indebtedness to the defendant. The District Court entered an order directing the defendant to pay to the plaintiff the amount of Reichsbank's deposit in the defendant bank with interest and the defendant appealed from that order. The Court of Appeals noted that this was not a case in which the putative debtor denied the existence of the debt but, rather, one in

which he asserted that an independent claim could be used as a set-off:

"Technically, a set-off at law is a money demand independent of and unconnected with the plaintiff's cause of action. * * * Hence the assertion by the Bank of a right of set-off is not a denial of the Reichsbank's claim for the amount of its deposit. Consequently, we believe that, in harmony with the principle that an admitted debt owed to an enemy must be paid over, the Custodian was entitled to recovery and the Bank must have recourse to § 9 to litigate its asserted right of set-off." (169 F.2d at page 935.)

The court stated that "this conclusion is not necessarily inconsistent with Simon v. Miller, D.C.S.D.N.Y. [1923], 298 F. 520, 521 * * * the situation there considered by Judge Learned Hand did not involve a set-off of claims arising from independent transactions, as in the case at bar." (169 F.2d at page 935, footnote 3). By way of dictum, the Court said:

"If the putative debtor denies the existence of any debt whatever, we should hesitate to hold that the Custodian's power extends so far as to make his ex parte determination that there is a debt and the amount of it conclusive in a proceeding under § 17. To so hold would mean that the Custodian can by his own ex parte action call property into existence for purposes of seizure. But the question in that bald form is not before us for decision. Here the Bank acknowledges that it became indebted to the Deutsche Reichsbank * * * but asserts a right of set-off arising out of independent transactions between itself and the German Government. Its right of set-off, if any, depends upon an allegation upon 'information and belief' that the Reichsbank 'was an instrumentality and part of the German Government.'"

The order appealed from was modified by striking out the item of interest and in other respects was affirmed. Judge Frank, in a concurring opinion, suggested that had the appellant asserted an unequivocal claim of mutual debts as between the defendant and the Reichsbank that fact would have called for reversal of the order; that he concurred because the defendant made no such claim but, rather, asserted a claim against the German Government as a set-off against its indebtedness to the Reichsbank. Certiorari was granted on the petition of the Custodian to resolve a conflict between the Second Circuit and the Third Circuit as to the question of interest (337 U.S. 953, 69 S.Ct. 1525, 93 L.Ed. 1754). The Supreme Court held that there was no authority in the Act for interest to be added as an incident to a summary order for the transfer of possession of funds. Though the parties discussed before the Supreme Court several other questions the Court did not consider them.

"In No. 15, the parties have discussed several questions which would have been presented if the answer had contained a denial of the alleged debt, an unequivocal plea of set off, or a claim of a lien upon the Deutsche Reichsbank's interest in the debt or in its proceeds. The answer, however, did not present those issues and we do not consider them." McGrath v. Manufacturers Trust Co., 1949, 338 U.S. 241, 249, 70 S.Ct. 4, 9, 94 L.Ed. 31.

Thus, Clark v. Manufacturers Trust Co., supra, and McGrath v. Manufacturers Trust Co., supra, stand merely for the proposition that where, in a proceeding by the Attorney General under § 17 of the Act, the defendant does not deny the alleged debt or plead an unequivocal set-off or a claim of a lien upon the interest of the enemy in the debt the Attorney General is entitled to an order directing the defendant to pay the debt to him.

The cases cited by the plaintiff in support of the motion do not support plaintiff's contention that the plaintiff has the authority to determine conclusively the existence of the alleged debt or that

the plaintiff, in an action under § 17 of the Act, is entitled to judgment on the pleadings where the answer of the defendant denies the alleged indebtedness.

The Court holds that the Act, when read in its entirety, does not vest in the President, the Alien Property Custodian or the Attorney General the power to make a conclusive determination as to the *existence* of a debt allegedly owing to an enemy; that it vests authority only to make a conclusive determination as to the identity of the creditor and his status as an enemy under the Act; that the vesting power granted under the Act applies only to a debt which, in fact, exists. By his answer the defendant denies the existence of the alleged debt. If he prevails on this issue the plaintiff will not be entitled to an order directing the defendant to pay over the alleged debt to the plaintiff or to judgment as prayed for in the complaint. The answer raises a material question of fact. The pleadings do not show that the plaintiff is entitled to judgment as a matter of law.

Motion for judgment on the pleadings is denied. Settle order.