William P. ROGERS, Attorney General of the United States, as Successor to the Alien Property Custodian, Plaintiff,

v.

Ludwig HERTLEIN, Defendant.

Civ. No. 15971.

United States District Court
E. D. New York.
April 13, 1959.

As Amended April 21, 1959.

Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., by Lee B. Anderson, Dept. of Justice, Washington, D. C. and Robert C. Carey, Asst. U. S. Atty., Brooklyn, N. Y., for plaintiff.

Luttinger & Passannante, New York City, for defendant, by Gilbert Siegel, New York City.

ZAVATT, District Judge.

This is an action instituted by the plaintiff under the provisions of § 17 of the Trading with the Enemy Act of 1917, as amended, 50 U.S.C.A.Appendix, §§ 1–39, hereinafter referred to as the Act.

In his complaint, the plaintiff alleges that the defendant became indebted to an enemy of the United States within the meaning of 50 U.S.C.A.Appendix, § 2, in the sum of $2,520, on or about February 13, 1942, when the defendant, as sales agent of Maschinenfabrik Herborn, Berkenhoff & Drebes, A. G., hereinafter referred to as Herborn, sold to Washburn Wire Co. Inc., of New York, New York, two Herborn wire drawing machines, model T.F. III, which were then situated within the United States; that the defendant paid no part of the proceeds of said sale to Herborn and was indebted to Herborn in that amount on February 11, 1953 when the Director of the Office of Alien Property executed Vesting Order No. 19170; that the plaintiff acquired title to the said debt of the defendant and that the defendant became indebted to the plaintiff therefor. The complaint states a claim under the Act which is still in effect as to any property or interest which was subject to vesting or seizure prior to January 1, 1947.[1] By his answer the defendant denied all the material allegations of the complaint.

On the trial of this action the defendant contended that the two machines had become his prior to the date when Herborn became an enemy under the Act; that when he sold the machines to Washburn, he sold his own property; that the proceeds from the sale in the sum of $2,800 belonged to him and did not constitute the property of Herborn nor create an indebtedness of the defendant to Herborn. The plaintiff contended that the machines were the property of Herborn; that they were sold to Washburn by the defendant as the agent of Herborn for $2,800; that the defendant was entitled to deduct from the gross amount received a 10% commission and thereby became indebted to Herborn in the net sum of $2,520; that Herborn was an enemy on the date of the sale and that the defendant is indebted to the plaintiff in the sum of $2,520.

The above entitled cause having come on regularly for trial and the court having duly considered the evidence and being fully advised in the premises, now finds the following:

### Findings of Fact

1. On July 16, 1933 the defendant entered into a written contract with Herborn whereby he became the sales agent of Herborn for the territory of the United States. The contract provided for a commission of from 10–20% for all or-

---

1. See the opinion of this court denying plaintiff's motion for summary judgment, reported in D.C., 167 F.Supp. 454.

ders coming from this territory, either through the defendant or directly from customers to Herborn, to be applied against the net-invoice and that such commissions would be paid to the defendant after the full payment of the invoices.

2. Between 1935 and 1937, while the defendant was in the employ of Washburn he sold to Washburn, as agent of Herborn, 26 Herborn machines and Washburn paid Herborn directly therefor.

3. The defendant did not sell any other Herborn machines in the United States until 1941 when he sold to Washburn the two Herborn machines referred to in the Vesting Order and in the complaint.

4. The defendant never billed Herborn for unpaid commissions allegedly due him for the sale of the 26 machines which he had sold in the United States between 1935 and 1937 as agent of Herborn.

5. On or about January 15, 1941, while in the employ of Washburn, the defendant sent it an invoice for $2,800 for the two Herborn machines referred to in the complaint at a unit price of $1,-400, which invoice bore the following caption:

"L. Hertlein
Representing
Herborn    Machine    Company
87–27    62 Road
Rego Park"

6. Approximately six months after the date of this invoice the two machines, which were in Buffalo, New York, were delivered to Washburn in New York.

7. On February 13, 1942 Washburn issued its check No. 12568 in the sum of $2,800 to the order of the defendant in payment of said invoices, which check the defendant deposited in his personal bank account. The defendant paid no part of said sum to Herborn.

8. Herborn is a corporation, partnership, association or other business organization which on or since December 11, 1941, and prior to January 1, 1947, was organized under the laws of, and had its principal place of business in, Germany. On February 11, 1953, and prior to January 1, 1947, it was a national of Germany, an enemy country.

9. The defendant has failed to establish that Herborn was indebted to him on February 13, 1942 or at any time thereafter.

## Conclusions of Law

1. The court has jurisdiction of the subject matter of this action and of the parties hereto.

2. On February 13, 1942, Herborn was an enemy as defined by the Act.

3. The two machines which were in the U.S.A. and which the defendant sold to Washburn were the property of Herborn.

4. The proceeds of the sale of said machines were the property of Herborn.

5. When the defendant received the proceeds of the sale of said two machines Herborn was not indebted to the defendant in any amount.

6. By retaining the sum of $2,800 for his own use the defendant became indebted to Herborn in the sum of $2,800 less a 10% commission, or in the net sum of $2,520 on February 13, 1942 and was so indebted on the effective date of the Vesting Order.

7. On February 11, 1953 the Director of the Office of Alien Property executed a Vesting Order by virtue of which title to the said indebtedness of the defendant to Herborn became vested in the Attorney General.

8. Upon the evidence and the law the court concludes that the plaintiff is entitled to judgment against the defendant in the sum of $2,520.

Judgment will be entered accordingly in favor of the plaintiff and against the defendant. The parties will settle an appropriate judgment, together with such proposed additional findings of fact and conclusions of law as are deemed by them to be necessary, within 10 days.