William P. ROGERS, Attorney General of the United States, as Successor to the Alien Property Custodian, Plaintiff,

v.

CHEMICAL CORN EXCHANGE BANK, formerly Chemical Bank and Trust Company,

and

Guaranty Trust Company of New York, Defendants.

United States District Court
S. D. New York.
Feb. 11, 1960.

---

1. Turner v. Wilson Line of Massachusetts, Inc., 1 Cir., 242 F.2d 414, 417.

Dallas S. Townsend, Asst. Atty. Gen., Director, Office of Alien Property, Morton S. Robson, Chief Asst. U. S. Atty., S. D. New York, New York City, Arthur R. Schor, and Philip Blacklow, Attys., Dept. of Justice, Washington, D. C., for plaintiff William P. Rogers, Atty. Gen., of the United States.

Cravath, Swaine & Moore, New York City, for defendant Chemical Corn Exchange Bank. Ralph L. McAfee, New York City, of counsel.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for defendant Guaranty Trust Co., James A. Thomas, Jr., New York City, of counsel.

DAWSON, District Judge.

This is a motion by plaintiff and a cross-motion by defendant seeking an order under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., granting summary judgment on the ground that there is no genuine issue as to any material fact and that each party is entitled to judgment as a matter of law.

The action is one brought by the Attorney General, as successor to the Alien Property Custodian, pursuant to the provisions of § 17 of the Trading With the Enemy Act, as amended (50 U.S.C.A. Appendix, § 17), in which the plaintiff seeks an accounting from each of the defendants of amounts which may be due under the terms of a certain Vesting Order No. 126, in which the Alien Property Custodian vested in himself for the benefit of the United States, pursuant to the provisions of the Trading With the Enemy Act, all property of whatsoever nature of North German Lloyd which was subject to the jurisdiction of the United States; and in which the plaintiff seeks judgment against each of the defendants for the amount shown to be due by said defendants, with interest and costs.

The Court finds the following facts to exist without substantial controversy:

Pursuant to a plan of readjustment, North German Lloyd, on June 21, 1934, entered into a written agreement dated as of May 1, 1933 with defendant Chemical Corn Exchange Bank (hereinafter referred to as Chemical), whereby the latter became American Paying Agent for the servicing of payments of principal and interest on certain Sinking Fund Bonds of 1933 issued by North German Lloyd to resident bondholders. Chemical continued to serve as Paying Agent until 1956 when defendant Guaranty Trust Company of New York (hereinafter referred to as Guaranty) was appointed successor Paying Agent to Chemical, in accordance with specific authority set forth in the agreement.

In April 1940, by Executive Order 8389, transactions between United States nationals and persons or corporations resident in countries occupied by Nazi Germany were thenceforth prohibited under the Trading With the Enemy Act, absent Treasury license. The Alien Property Custodian, of whom the Attorney General is now the legal successor, was authorized to issue vesting orders to make effective the Executive Order, and on September 5, 1942, Vesting Order No. 126 [1] was issued vest-

---

1. Pertinent portions of the order provide that:

"[A]ll property of any nature whatsoever owned or controlled by, payable or

ing all property whatsoever of North German Lloyd subject to the jurisdiction of the United States.

On December 12, 1944 the Custodian caused to be issued to Chemical a Treasury license authorizing certain disbursements from funds then on hand, totaling over $53,000, permitting Chemical to pay past due and then due installments of interest to bondholders situated in the United States. This license remained in full force and effect until July 1953, when the authorization was suspended.

On October 18, 1955 the Attorney General made formal demand for the turnover of the balance of the funds upon Chemical. Chemical thereupon advised him that Guaranty had been appointed successor Paying Agent and that all funds had been paid over to it. On November 27, 1956 an identical turnover demand was served on Guaranty. Guaranty denied that it held any property of North German Lloyd as described in the 1942 Vesting Order, or otherwise, and refused to turn over the funds in suit to the Attorney General.

> deliverable to, or held * * * on behalf of or on account of or owing to * * * Norddeutscher Lloyd (North German Lloyd) * * * is property of nationals, and represents an interest in a business enterprise within the United States which is a national, of a designated enemy country * * * and * * * [the Alien Property Custodian], deeming it necessary in the national interest, hereby vests such property, to be held, used, administered, liquidated, sold, or otherwise dealt with in the interest of and for the benefit of the United States.
>
> "Such property and any or all of the proceeds thereof shall be held in a special account pending further determination of the Alien Property Custodian. This shall not be deemed to limit the powers of the Alien Property Custodian to return such property or the proceeds thereof, or to indicate that compensation will not be paid in lieu thereof, if and when it should be determined that such return should be made or such compensation should be paid."
>
> 2. Section 5(b) provides in material part:
> "(1) During the time of war * * * the President may, through any agency that he may designate, or otherwise, and under such rules and regulations as he

The papers indicate that Chemical, as of October 1955, was holding something in excess of $37,000 as funds received for the payment of interest relating to the North German Lloyd 20-year Sinking Fund Gold Bonds due November 1, 1947.

Thereafter, on October 1, 1957, the Attorney General commenced this action, basing his complaint on § 17 of the Trading With the Enemy Act, as amended. 50 U.S.C.A.Appendix, § 17.

The issue presented by each party's motion for summary judgment is whether or not a summary possessory proceeding instituted by plaintiff under § 17 of the Trading With the Enemy Act, based upon a prior ex parte finding that the funds held by defendants were enemy owned pursuant to a valid vesting order, precludes defendants from raising the issue of enemy ownership.

■ Initially, there is no longer any doubt that pursuant to § 5(b) [2] and § 7 (c) [3] of the Trading With the Enemy

> may prescribe, by means of instructions, licenses, or otherwise—
> * * * * *
> (B) investigate, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal * * * or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest,
> by any person, or with respect to any property, subject to the jurisdiction of the United States; and any property or interest of any foreign country or national thereof shall vest, when, as, and upon the terms, directed by the President, in such agency or person as may be designated from time to time by the President * * * and such designated agency or person may perform any and all acts incident to the accomplishment or furtherance of these purposes * * *."
>
> 3. Section 7(c) provides:
> "If the President shall so require any money or other property including (but not thereby limiting the generality of the above) * * * choses in action, and rights and claims of every character and description owing or belonging to or held

Act, as amended, the power of the Alien Property Custodian to vest enemy property in this country and summarily reduce to possession is beyond question. Silesian American Corp. v. Clark, 1947, 332 U.S. 469, 68 S.Ct. 179, 92 L.Ed. 81.

Moreover, it is equally well settled that the Custodian may resort to summary proceedings in the courts to reduce to possession property which he has determined to be enemy owned and that such proceedings do not leave open for adjudication the correctness of the Custodian's determination of enemy ownership and the validity of claims of any non-enemy against the vested property.

"* * * the determination of the Custodian is conclusive whether right or wrong. And it may be exercised by forcible seizure of the property or by suit and, if by suit, the suit is merely possessory and must be yielded to; the right of any claimant being postponed to subsequent assertion * * *." Commercial Trust Co. of New Jersey v. Miller, 1923, 262 U.S. 51, 53, 43 S.Ct. 486, 487, 67 L.Ed. 858:

In re Miller, 2 Cir., 1922, 281 F. 764. As Judge Learned Hand remarked in Kahn v. Garvan, D.C.S.D.N.Y.1920, 263 F. 909, 916:

"* * * The act intends the immediate reduction to possession of all property which the Custodian shall decide to be enemy property, all questions arising from his mistakes, or even from his oppressive or arbitrary action, are relegated to suits under section 9. By the capture, nothing is condemned, nothing confiscated, nothing concluded."

The defendants raise no issue of fact. Their argument is purely one of the application of law. Defendants urge that the monies held by Guaranty are held as trust funds, that title is in the trustee,

which is an American bank, and that the vesting order and subsequent turnover demands could not legally apply to such trust funds. They urge that the vesting order vests in the United States "all property" of North German Lloyd and that an issue is presented as to whether or not funds now in the bank's custody are such "property."

There is considerable doubt as to whether the funds paid over to Chemical and subsequently to Guaranty, as Paying Agents, constitute trust funds. See, Distinction Between the Rights of Stockholders and Bondholders to Special Bank Deposits by Corporations for Payments of Dividends or Interest on Bonds. 28 Colum.L.Rev. 477. It is to be noted, for example, that the indenture under which the funds were paid over, a copy of which is annexed to the complaint, does not state that the funds are paid to the Paying Agent as trustee. It provides in part (Article VII, Section 1):

"* * * The Company appoints Chemical Bank & Trust Company as Paying Agent for the service of the Bonds."

And again, at Article VII, Section 3:

"Any moneys received by said Paying Agent pursuant to the terms of the Indenture may be treated by it, until they are required to pay out the same in conformity with the provisions hereof, as general deposits without any liability for interest. * * *"

There is considerable authority for the proposition that deposits of funds in a bank by a corporate or governmental debtor with instructions to meet payments of maturing principal or interest on bonds does not create a trust fund. In re Associated Gas & Electric Co., 2 Cir., 1943, 137 F.2d 607; Guidise v. Island Refining Corp., D.C.S.D.N.Y.1923, 291 F. 922.

for, by, on account of, or on behalf of, or for the benefit of, an enemy * * * which the President after investigation shall determine is so owing or so belongs or is so held, shall be conveyed,

transferred, assigned, delivered, or paid over to the Alien Property Custodian, or the same may be seized by the Alien Property Custodian * * *."

In any event, the determination as to whether the funds now in the hands of the defendants are property covered by the vesting order and properly may be taken by the Alien Property Custodian is an issue which can be raised in a Section 9 proceeding under the Trading With the Enemy Act (50 U.S.C.A. Appendix, § 9), as can also the claims of bondholders for the payment of their interest coupons. The determination of those questions is not before this Court. National Savings and Trust Co. v. Brownell, 1955, 95 U.S.App.D.C. 370, 222 F.2d 395, 397, certiorari denied 349 U.S. 955, 75 S.Ct. 885, 99 L.Ed. 1279; Brownell v. Kermath Mfg. Co., D.C.E.D. Mich.1954, 120 F.Supp. 331, 335, affirmed 6 Cir., 1955, 222 F.2d 557, certiorari denied, 1955, 350 U.S. 843, 76 S. Ct. 84, 100 L.Ed. 752.

"A suit under Section 17 is a summary possessory proceeding and does not, as a general rule, involve adjudication of title to the property * * * hence it provides for an exercise of government but also provides redress for mistakes in its exercise, by claimant of the property filing a claim under Section 9 of the Act which, if not yielded to, may be enforced by suit." 120 F.Supp. 331, 335.

■ All this Court decides on this motion is that the Attorney General is entitled to the possession of the property, subject to the remedy of claimants provided in § 9 of the Act. Whether the bank has title to the property, as trustee, which could not be vested by the Alien Property Custodian, and whether holders of the bonds are entitled to be paid their interest out of the funds so vested, are questions which must await determination of proceedings brought under § 9 of the Act

■ It was urged on oral argument, but not in the briefs, that suits under § 9 of the Act are now barred by the amendment to § 33 of the Act (50 U.S. C.A.Appendix, § 33). An examination of that section shows that this contention is not well founded and that the time for the bringing of suit pursuant to § 9 does not begin to run until two years from the date of the seizure by the Alien Property Custodian of the property in respect of which relief is sought.

The Court concludes that there is no genuine issue as to any material fact and that plaintiff is entitled to judgment as a matter of law for the relief demanded in the complaint. The Court, therefore, directs that summary judgment to such effect shall be entered. So ordered.